IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD BECKER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A, and J.P. MORGAN TRUST COMPANY, NATIONAL ASSOCIATION,<br><br>Defendants. | Civil Action No.<br><br>CLASS ACTION |

## CLASS ACTION COMPLAINT

Plaintiff, individually and on behalf of all others similarly situated, by his attorneys, alleges the following based upon information and belief, except as to allegations specifically pertaining to plaintiff and his counsel, which are based on personal knowledge.

## NATURE OF THE CASE

1. This is a class action on behalf of current holders of revenue bonds issued in November 1992 for the benefit of Lower Bucks Hospital ("LBH"), against defendants Bank of New York Mellon Trust Company, N.A. ("BNY Mellon"), and J.P. Morgan Trust Company, National Association ("JP Morgan"). During their respective tenures as fiduciaries for the bondholders in the capacity as indenture trustees for the 1992 revenue bonds, JP Morgan and BNY Mellon negligently and in breach of their fiduciary and contractual duties failed to perfect a security interest in the collateral backing the bonds, resulting in the loss of the bonds' priority,

which in turn resulted in financial losses to the bondholders when LBH filed for bankruptcy protection.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1332(d). The aggregate amount in controversy for this class action exceeds the sum of $5,000,000 (exclusive of interest and costs), at least one member of the class is a citizen of a state that is different from the citizenship of at least one defendant, and there are at least 100 members of the class. 28 U.S.C. §1332(d)(2),(5).

3. Venue is proper in this District pursuant 28 U.S.C. §1391(a), as the acts and omissions giving rise to this claim occurred in this District.

## PARTIES

4. Plaintiff, Leonard Becker, is and was at all times relevant hereto a holder of revenue bonds issued by the Borough of Langhorne Manor Higher Education and Health Authority (the "Authority"), Series of 1992 (the "Bonds"). Plaintiff is a citizen of the Commonwealth of Pennsylvania.

5. Defendant BNY Mellon is a nationally chartered bank and trust company with its principal place of business in Los Angeles, California. BNY Mellon is a citizen of the State of California for purposes of subject matter jurisdiction. From at least October 31, 2007 through the present, BNY Mellon served as trustee under a trust indenture (the "Indenture") dated as of November 1, 1992 between the Authority and Continental Bank (such trustee being referred to hereafter as the "Indenture Trustee").

6. Defendant JP Morgan is nationally chartered bank and trust company with its principal place of business is in Los Angeles, California JP Morgan is a citizen of the State of

California for purposes of subject matter jurisdiction. At certain times relevant hereto JP Morgan served as Indenture Trustee.

## CLASS ACTION ALLEGATIONS

7. Plaintiff brings this action on his own behalf and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class consisting of all current Bondholders (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any defendants.

8. The Class is so numerous that joinder of all members is impracticable. The face amount of the Bonds issued in 1992 was $35,908,000, of which at least approximately $25,000,000 are outstanding. The Bonds are held by more than 100 persons.

9. There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member. The common questions include the following:

    a. Whether defendants breached fiduciary duties owed to members of the Class;

    b. Whether defendants acted negligently;

    c. Whether defendants breached contractual obligations owed to members of the Class as third-party beneficiaries of the Trust Indenture and/or the Loan and Security Agreement contemporaneously issued; and

    d. Whether members of the Class incurred damages as a result of defendants' wrongful conduct, and, if so, the amount of such damages.

10. Plaintiff's claims are typical of those of the Class in that they arise out of the same wrongful conduct that affected all members of the Class

11. Plaintiff will adequately protect the interests of the Class. He has retained competent, experienced counsel and his interests do not conflict with those of other members of the Class.

12. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and establish incompatible standards of conduct for the party opposing the Class.

## SUBSTANTIVE ALLEGATIONS

13. The Authority is a body organized under the Pennsylvania Municipality Authorities Act, Pa. Cons. Stat. Ann. § 5601 *et seq.*, for the purpose of, *inter alia*, acquiring, holding, constructing, financing, improving, maintaining, and operating, owning or leasing projects for health centers.

14. On or about November 1, 1992, the Authority issued the Bonds in the aggregate principal amount of $35,908,000 for the benefit of LBH, a hospital located in Bristol, Bucks County, Pennsylvania, to enable LBH to refinance certain existing obligations and to fund certain capital improvement projects.

15. In connection with the Bond offering, the Authority and Continental Bank entered into the Trust Indenture, dated as of November 1, 1992, under which Continental Bank became the Indenture Trustee for persons holding the Bonds (the "Bondholders"). The Trust Indenture provides, *inter alia*, that any moneys that the Indenture Trustee receives from LBH pursuant to the terms of the Indenture shall be held in trust for the benefit of the Bondholders and distributed

in accordance with the terms of the Indenture. A copy of the Indenture is attached hereto as Exhibit A.

16. Contemporaneously, the Authority also executed an assignment pursuant to which it assigned all right, title, and interest under the Loan and Security Agreement, including the right to, and a security interest in, LBH's Unrestricted Gross Revenues, to Continental Bank, as Indenture Trustee, for the benefit of the Bondholders.

17. Upon completion of the public offering of the Bonds, the Authority transferred the proceeds to LBH in the form of a loan. In connection with that loan, LBH agreed to pay, among other things, principal and interest on the Bonds, and granted the Authority a lien on, and security interest in, LBH's "Unrestricted Gross Revenues" (which is defined in a Loan and Security Agreement entered into by the Authority and LBH) and certain other funds held by LBH (collectively referred to as the "Collateral").

18. On or about November 30, 1992, UCC-1 financing statements were filed with the Commonwealth of Pennsylvania Department of State and the Prothonotary of Bucks County, Pennsylvania, listing Continental Bank as a creditor, for the purpose of perfecting the security interest of Continental Bank, as Indenture Trustee on behalf of the Bondholders, in the Collateral.

19. Sometime after March 31, 1997, LBH changed its name to Temple Lower Bucks Hospital, Inc. In March 2003, a UCC-1 financing statement relating to the Collateral was filed listing JP Morgan, which had succeeded Continental Bank as Indenture Trustee, as creditor and Temple Lower Bucks Hospital, Inc. as debtor.

20. On or about May 12, 2006, LBH changed its name back to Lower Bucks Hospital.

21. JP Morgan continued to serve as Indenture Trustee until it was replaced in as Indenture Trustee by BNY Mellon no later than October 31, 2007. During JP Morgan's tenure after May 12, 2006, it did not file a UCC financing statement listing Lower Bucks Hospital as debtor.

22. On or prior to October 31, 2007, The Bank of New York Trust Company, N.A., which is the predecessor-in-interest of defendant BNY Mellon, became the Indenture Trustee and has continued to serve in that capacity through the date of this Complaint.

23. On October 31, 2007, The Bank of New York Trust Company, N.A. filed a UCC financing statement amendment relating to the Collateral, identifying itself as the Indenture Trustee.

24. On September 11, 2009, BNY Mellon filed a revised UCC financing statement relating to the Collateral, showing a change of the creditor's name from "The Bank of New York Trust Company, N.A." to "The Bank of New York Mellon Trust Company, N.A." But the name of the debtor identified in the UCC financing statement was not changed from "Temple Lower Bucks Hospital, Inc.," even though the hospital had changed its name to "Lower Bucks Hospital" in May 2006.

25. In September 2009, LBH, through its agents, informed BNY Mellon that the latter's lien in the Collateral was not perfected because LBH had changed its name to "Lower Bucks Hospital" but that the UCC financing statements on file with the Pennsylvania Department of State still listed "Temple Lower Bucks Hospital" as the debtor.

26. Despite acquiring this knowledge no later than September 2009, and despite its having reason to know that LBH was having financial difficulty, BNY Mellon took no steps to perfect its security interest in the Collateral until October 16, 2009, at which time it filed an

6

amendment to its 2007 UCC financing statement and a new UCC-1 financing statement, both listing "Lower Bucks Hospital" as the debtor.

27. On January 13, 2010, LBH, along with two related entities, filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"). The bankruptcy case was assigned docket number Bky. No. 10-10239 ELF.

28. On April 30, 2010, even before BNY Mellon filed a proof of claim on behalf of the Bondholders in the bankruptcy proceeding, LBH commenced an adversary proceeding in the Bankruptcy Court against BNY Mellon, as "Indenture Trustee for the Borough of Langhorne Manor Higher Education and Health Authority Revenue Bonds, Series of 1992 (The Lower Bucks Hospital)." In the adversary proceeding, LBH sought to establish that because BNY Mellon had filed UCC financing statements to perfect its security interest in the Collateral less than 90 days before the date LBH filed its petition in bankruptcy, any lien created by BNY Mellon's filing was an avoidable preference.

29. On or about August 18, 2010, BNY Mellon filed a proof of claim in the amount of $25,906,294.98 in the LBH bankruptcy proceeding. According to the proof of claim, this sum represented the outstanding principal amount of the Bonds plus $973,865.33 in accrued unpaid interest.

30. Thereafter, LBH and BNY Mellon entered into a stipulation resolving the adversary proceeding (the "Stipulation"). The Stipulation provides, *inter alia*, for BNY Mellon's proof of claim on behalf of the Bondholders to be compromised as follows:

> the Bond Trustee Claim shall (i) be allowed as a secured claim in the amount of $8,150,000 plus the amount of the Reserve Fund and the Debt Service Fund (as such terms are defined in the Amended Complaint) and (ii) otherwise be disallowed;

Copies of the Stipulation and order of the Bankruptcy Court approving the Stipulation are attached hereto as Exhibit B.

31.     The amounts in the Reserve Fund and the Debt Service Fund are unknown at this time, but are believed to be no more than the amounts contained in those funds at the time of LBH filed its bankruptcy petition, *viz.*, $2,172,502 in the Reserve Fund and $29,544.64 in the Debt Service Fund, which would make the total amount of the allowed claim of BNY Mellon, as Indenture Trustee, a maximum of $10,352,046.64.

## COUNT I
## BREACH OF FIDUCIARY DUTY

32.     Paragraphs 1 through 31 hereof are incorporated by reference.

33.     During the respective periods when JP Morgan and BNY Mellon served as Indenture Trustee, JP Morgan and BNY Mellon were fiduciaries to the Bondholders and, as such, were required to act in a prudent manner in discharging their fiduciary duties. These fiduciary duties to the Bondholders included protecting their rights and interests under the Bond Indenture and the Loan and Security Agreement and, in particular, insuring that the Indenture Trustee's security interest in the Collateral for the benefit of the Bondholders was at all times perfected.

34.     During the respective periods when JP Morgan and BNY Mellon served as Indenture Trustee, JP Morgan and BNY Mellon breached their fiduciary duty to the Bondholders by failing to take reasonable steps to insure that the Indenture Trustee's security interest in the Collateral on behalf of Bondholders was perfected. Specifically, JP Morgan and BNY failed to file a UCC financing statement relating to the Collateral properly identifying LBH as the debtor.

35. As a result of defendants' breaches of fiduciary duty, BNY Mellon was forced to compromise its claim on behalf of Bondholders in the LBH bankruptcy proceeding, which has caused the Bondholders to be entitled to receive less in connection with LBH's reorganization than they otherwise would have received, thereby resulting in economic injury to plaintiff and members of the proposed class.

## COUNT II
### NEGLIGENCE

36. Paragraphs 1 through 35 hereof are incorporated by reference.

37. During the respective periods when JP Morgan and BNY Mellon served as Indenture Trustee, defendants JP Morgan and BNY Mellon each owed a duty of care to Plaintiff and the other Bondholders, which duty included using reasonable care to assure that the Bondholders' rights and interests were protected, including, in particular, that the Indenture Trustee's security interest in the Collateral for the benefit of the Bondholders was perfected.

38. Defendants JP Morgan and BNY Mellon each breached its duty of care to plaintiff and the other members of the Class by failing to use reasonable care during the periods when each served as Indenture Trustee to assure that its security interest in the Collateral for the benefit of the Bondholders was perfected.

39. As a result of defendants' negligence, as set forth herein, BNY Mellon was forced to compromise its claim filed on behalf of the Bondholders in the LBH bankruptcy proceeding, which has caused the members of the Class to be entitled to receive less in connection with LBH's reorganization than they otherwise would have received, thereby resulting in economic injury to plaintiff and members of the proposed Class.

## COUNT III
## BREACH OF CONTRACT

40. Paragraphs 1 through 39 hereof are incorporated by reference.

41. The Trust Indenture is a contract originally between LBH and Continental Bank, as Indenture Trustee, that through successive assignments created a contractual relationship between LBH and JP Morgan during the latter's tenure as Indenture Trustee and since at least October 31, 2007 between LBH and BNY Mellon. Throughout the existence of the Trust Indenture, the Bondholders were and are intended third-party beneficiaries of the Trust Indenture. Accordingly, plaintiff, on behalf of himself and other members of the Class, has standing to assert this claim for breach of contractual obligations provided in the Trust Indenture.

42. The Trust Indenture contemplated that The Authority and LBH would contemporaneously enter into the Loan and Security Agreement. Upon executing the Loan and Security Agreement, and as provided therein, the Authority assigned its interest therein to Continental Bank, which interest, through a series of successive assignments, was assigned to JP Morgan during its tenure as Indenture Trustee and thereafter, since at least October 31, 2007, to BNY Mellon. Throughout the existence of the Loan and Security Agreement, as contemplated by the Trust Indenture, the Bondholders were and are intended third-party beneficiaries thereof. Accordingly, plaintiff, on behalf of himself and other members of the Class, has standing to assert this claim for breach of contractual obligations provided in the Loan and Security Agreement.

43. The Loan and Security Agreement provides in paragraph 6.4 as follows:

> 6.4. Uniform Commercial Code; Filings. This Loan Agreement shall Constitute a security agreement within the meaning of the Pennsylvania Uniform Commercial Code. In addition to all other rights and remedies hereunder the Authority, and the Trustee as its assignee, shall have all rights and remedies of a secured party under the Pennsylvania Uniform

10

> Commercial Code. The Hospital will join with the Authority and the Trustee in executing and filing such financing statements, continuation statements and other documents under the Pennsylvania Uniform Commercial Code or other applicable law as the Authority or the Trustee may specify and will pay the cost of filing the same in such public Offices as the Authority or the Trustee shall designate.

A copy of the Loan and Security Agreement is attached hereto as Exhibit C.

44. The Loan and Security Agreement thus imposed a duty upon JP Morgan and BNY Mellon, during their respective tenures as Indenture Trustee, to execute and file such financing statements, continuation statements and other documents as are required under the Pennsylvania Uniform Commercial Code to perfect the security interest created by the Loan and Security Agreement.

45. JP Morgan and BNY Mellon, during their respective tenures as Indenture Trustee, failed to execute and file, in a timely manner, such financing statements, continuation statements and other documents as are required under the Pennsylvania Uniform Commercial Code to perfect the security interest created by the Loan and Security Agreement, thereby causing the security interest created by the Loan and Security Agreement to be unperfected, which resulted in financial loss to plaintiff and other members of the Class, as set forth above.

WHEREFORE, plaintiff respectfully requests the Court to enter judgment in his favor and in favor of the Class as follows:

1. Declaring this to be a class action pursuant to Rules 23(a) and (b)(3);

2. Awarding plaintiff and the members of the Class damages;

3. Awarding plaintiff and the members of the Class pre- and post-judgment interest, as well as attorneys' fees, experts' fees and costs;

4. Awarding such other relief as this court may deem proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: October 14, 2011

BARRACK, RODOS & BACINE

By: _____
Daniel E. Bacine
M. Richard Komins
Lisa M. Lamb
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-0600
Facsimile:  (215) 963-0838

*Attorneys for Plaintiff*