UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONARD BECKER | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-6460 |
| | : | |
| THE BANK OF NEW YORK MELLON TRUST | : | |
| COMPANY, N.A., and J.P. MORGAN TRUST | : | (Consolidated with No. 12-6412) |
| COMPANY, NATIONAL ASSOCIATION | : | |

MEMORANDUM

Legrome D. Davis, J.                                                                             October 27, 2016

       Defendants The Bank of New York Mellon Trust Company, N.A., and J.P. Morgan Trust Company, National Association, move for reconsideration of the Order and Memorandum, entered March 23, 2016 (Docs. 136, 137).[1] For the history of this case, see footnote.[2] Jurisdiction is diversity and amount in controversy, 28 U.S.C. §§ 1332, 1332(d)(2).

       The motion for reconsideration asserts that rulings on the parties' respective motions for summary judgment "overlooked" "critical," "undisputed record evidence" that the Chapter 11 Plan for reorganization of Lower Bucks Hospital ("LBH")[3] treated movants' claims against LBH for indemnification of their fees and expenses as "allowed claims," which must be paid first from funds allowed under the Plan for the bondholders. Defs. Mot. (Doc. 138); Defs. Br. at 1-7, 13-14

---

[1] The memorandum decision granted in part Plaintiff Leonard Becker's motion for partial summary judgment (Doc. 125), denied Defendants' cross-motion for summary judgment (Doc. 126), and dismissed the counterclaim (Doc. 48). Order & Mem., entered Mar. 23, 2016 (Docs. 136, 137). Unless noted otherwise, "Doc." refers to an ecf filing in this Civil Action No. 11-6460 ("Becker I").

[2] This action was consolidated with Becker v. The Bank of New York Mellon Trust Co., N.A., Civil Action No. 12-6412 ("Becker II"). The consolidated litigation was certified as a class action and Plaintiff Becker was certified as class representative. Order & Mem., entered Oct. 5, 2016 (Docs. 146, 147). The history of this class action is set forth in that memorandum decision. Id., Mem. at 1-21. See also Order & Mem., entered Mar. 23, 2016 (Docs. 136, 137), deciding the parties' respective motions for summary judgment; Order & Mem., dated Oct. 31, 2012 (Doc. 39), granting dismissal of the negligence claim stated in Count II of the Complaint (Doc. 1), and denying dismissal of the remaining claims.

[3] Familiarity with the underlying bankruptcy proceedings is assumed here. See In re Lower Bucks Hosp., Bankr. No. 10-10239 (Bankr. E.D. Pa.) (Frank, J.); Lower Bucks Hosp. v. The Bank of New York Mellon Trust Co., N.A., Adv. No. 10-00174 (Bankr. E.D. Pa.) (Frank, J.). See also In re Lower Bucks Hosp., 471 B.R. 419 (Bankr. E.D. Pa. 2012) (Frank, J.), aff'd, 488 B.R. 303 (E.D. Pa. 2013) (Savage, J.), aff'd, 571 F. App'x 139 (3d Cir. 2014) (Ambro, J.).

(Doc. 138-2); Defs. Reply at 1, 3-4, 6-7 (Doc. 144).  The motion asserts that the memorandum decision also "overlooked" previous rulings in the bankruptcy case that confirm Defendants' asserted rights to indemnification and priority in payment.  Defs. Br. at 4, 6, 14-17; Defs. Reply at 2, 5-6.  See In re Lower Bucks Hosp., 488 B.R. 303 (E.D. Pa. 2013) (Savage, J.), aff'g, 471 B.R. 419 (Bankr. E.D. Pa. 2012) (Frank, J.), aff'd, 571 F. App'x 139 (3d Cir. 2014) (Ambro, J.).

Plaintiff Becker opposes reconsideration, primarily because the motion for reconsideration does not meet the requisite legal standards for that extraordinary procedure.  Pl. Resp. (Doc. No. 139).  In Becker's view, the motion is "a rehash of arguments" previously presented and already considered on summary judgment, and the motion does not "make any arguments or point to anything that would justify reconsideration."  Id. at 1-2, 12.  Becker's position prevails.

Our Court of Appeals holds that the scope of a motion for reconsideration "is extremely limited."  Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011).  "Accordingly, a judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds:  (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available *when the court granted the motion for summary judgment*; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Id. (alteration and emphasis added in original) (quoting Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (citation and quotation marks omitted)).

None of the narrow reasons or categories for reconsideration applies here.  The motion for reconsideration does not cite an intervening change in the controlling law, and it does not present new evidence.  The motion asserts arguments that could have been raised before, reargues previously presented matters, and expresses disagreement with the memorandum decision.  The rulings by the memorandum decision, entered March 23, 2016, will not be altered or amended.

The reconsideration motion incorrectly asserts that the memorandum decision overlooked the proof of claim, which the Indenture Trustee—The Bank of New York Mellon Trust Company ("BNYM")— filed against LBH in the bankruptcy case on August 18, 2010. Proof of Claim & Suppl. (Doc. 126-14). But the entire record was considered—and the proof of loss was considered for the purpose that it was submitted.

Defendants did not assert, mention, or even suggest in their summary judgment papers, as proposed here on reconsideration, that the proof of claim evidences BNYM's asserted rights to indemnification and priority payment. Instead, the proof of claim was cited solely in regard to proof of damages. Defendants contended that the proof of claim did not evidence the value of collateral securing the bonds: "the Indenture Trustee's proof of claim was merely a pleading— an assertion of its rights to the collateral." Defs. Resp. Summ. J. at 18 (Doc. 129). And the "proof of claim was an assertion of rights in the collateral, not a representation or a guarantee as to the worth of that collateral." Defs. Reply Summ. J. at 5-6 (Doc. 133). See also Defs. Br. Summ. J. (Doc. 126-3) (the proof of claim was not mentioned). It was ruled that triable disputes exist as to the extent of recoverable loss or damage. See, e.g., Mem., entered Mar. 23, 2016, at 19, 24, 36-40; Mem., entered Oct. 5, 2016, at 32-40 (Doc. 146) (reviewing the parties' evidence).

The motion for reconsideration resubmits the proof of claim for a new purpose—that is, establishing an "allowed claims" theory of recovery. That theory is also asserted for the first time on reconsideration. The theory posits that BNYM's "indemnification claims against LBH—both for expenses incurred in the bankruptcy proceedings and in litigation relating to the Bonds—were *Allowed Claims* that the Plan specified were to be satisfied from the funds distributed to the Indenture Trustee," and only the net funds were to be paid to the bondholders. Defs. Br. at 1, 5-7 (emphasis in original). The theory is supported by citation to the proof of

claim, which "specifically set forth" and referenced provisions of the bond financing transaction agreements—precisely, the Loan Agreement §§ 4.2 and 11.4(e) and the Indenture § 11.04 (Docs. 126-6, 126-7). Id. at 1-2 (quoting Proof of Claim, Suppl. ¶ 4). And, the theory posits, BNYM is to be paid first: "the indemnification claim was an Allowed Claim satisfied under the Plan by a priority payment from the distributions paid by LBH" to settle the bankruptcy adversary proceeding. Defs. Reply at 6. The asserted right to priority payment is supported by the proof of claim's citation of the Indenture § 10.11: "the Plan satisfies *LBH's indemnification obligation from the funds distributed under the Plan*, with the priority payment under § 10.11 (specifically referenced in the Proof of Claim) preserved." Defs. Reply at 7 (emphasis in original). However, neither the proof of claim nor the allowed claims theory warrants reconsideration.

The proof of claim obviously is not new evidence. It was part of the record long before summary judgment rulings adverse to Defendants were entered. Our Court of Appeals has "made clear that '"new evidence," for reconsideration purposes, does not refer to evidence that a party . . . submits to the court after an adverse ruling.'" Blystone, 664 F.3d at 415 (quoting Howard Hess, 602 F.3d at 252). "Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration." Id. at 416 (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).

The allowed claims theory could have been presented before, but it was not presented. Our Court of Appeals has also made clear that reconsideration motions "cannot be used to present new arguments that could have been raised prior to judgment." Blystone, 664 F.3d at 416 (quoting Howard v. United States, 533 F.3d 472, 475 (6th Cir. 2008)). "Such motions are not to be used as an opportunity to relitigate a case," id. at 415, or "restate already rejected arguments," Hurst v. City of Rehoboth Beach, 288 F. App'x 20, 26 (3d Cir. 2008). See United

4

States v. Narducci, No. 88-cr-03, 2011 WL 5865970, at *2 (E.D. Pa. Nov. 22, 2011) (Relitigating "the same set of facts presented in the original motions . . . is emphatically not the purpose of a motion for reconsideration.").

The newly asserted allowed claims theory is not without its predecessors, however. On summary judgment, Defendants maintained that the Indenture Trustee, BNYM, is entitled to be indemnified for all of its fees and expenses, and those amounts should be deducted first from the $8,150,000.00 allowed under the Plan for the bondholders. Defendants contended that cited provisions of the Loan Agreement and the Indenture created the asserted contractual rights. It was also their position that cited provisions of the Plan for LBH's reorganization preserved and continued those rights. See Defs. Br. Summ. J. at 30-31 (Doc. 126-3). In their next brief, Defendants adhered to that position. Defs. Resp. Summ. J. at 21-26 (Doc. 129). However, that brief added that the BNYM's claim for indemnification and priority payment was being asserted only against the distributions allowed under the Plan for the bondholders, not against the bondholders personally. Id. at 23, 25-26, 29 ("The right to be indemnified for any losses . . . is a contractual right that has been asserted against the funds paid by LBH."). The addition was made in response to Plaintiff's position that nothing in the transaction agreements or the Plan gives BNYM a right to be indemnified by the bondholders individually. See, e.g., Pl. Br. Summ. J. (Doc. 125-1). In the next following brief, Defendants again articulated their position: "the right to be indemnified for any losses, including the costs of defending against Plaintiff's allegations, is a clear contractual right asserted *against the funds paid by LBH in the bankruptcy pursuant to the Plan*." Defs. Reply Summ. J. at 10 & n.7 (Doc. 133) (emphasis in original). On summary judgment, Defendants' position did not prevail. See Order & Mem., entered Mar. 23, 2016, at 30-31, 25-39.

Movants now retool their unsuccessful position on summary judgment. They do so by citation to the proof of claim and assertion of the allowed claims theory. Whether considered to be an expanded version of evolving predecessor theories, or instead, a novel argument that could have been raised before the entry of adverse summary judgment rulings, this is not proper argument on reconsideration. Reconsideration motions are not to be used to patch up shortcomings in previously asserted theories and arguments.

Moreover, the allowed claims theory takes its predecessor theories into a new realm of legal and factual considerations—one which is not fully developed on the record and which Plaintiff cannot fairly be required to respond on a motion for reconsideration. For these reasons, the allowed claims theory will not be decided on the merits here. This ruling does not permit any error of law or fact to stand uncorrected, nor does it occasion any injustice. The existing record suggests that the theory is without any discernible merit that would warrant additional discovery, briefing by the parties, and judicial consideration.

The allowed claims theory resurrects confusion arising from various adversarial descriptions of the bondholders' claims in the bankruptcy case. The descriptions conflate the Indenture Trustee's personal claims against LBH for indemnification and priority payment, which rights existed prior to LBH's discharge as of the effective date of the Plan, January 19, 2012, with the bondholders' rights to distributions under the Plan, as of the Plan's effective date. The descriptions conflate these two categories of claims by labeling the Indenture Trustee's and the bondholders' claims as a single amalgamated claim. The allowed claims theory takes advantage of that confusion. Defs. Br. at 2, 5-6, 8, 12; Defs. Reply at 1, 6-7.

The genesis of the confusion was the proof of claim. That document asserted the bondholders' claims as secured creditors of LBH's estate suing for the outstanding bond principal

and interest. It also asserted the Indenture Trustee BNYM's personal claims as a creditor contractual indemnitee of LBH suing for indemnification and priority payment of its fees and expenses. Proof of Claim, Suppl. ¶¶ 3, 4. In various notices, instruments, and court filings, BNYM again referred to the bondholders' claims and the Indenture Trustee's personal claims as a single "consolidated claim." Lower Bucks Hosp., 471 B.R. at 461. Judge Frank recognized that by doing so, BNYM created "a significant ambiguity."[4] The conflation of claims was also reflected in the Stipulation settling the adversary proceeding (Bankr. Doc. 1320) and was continued in the Plan (Bankr. Doc. 1350).

The Stipulation used the "Bond Trustee Claim" to describe the proof of claim.[5] However, the Stipulation ¶ 2(a) expressly "allowed . . . a secured claim in the amount of $8,150,000 plus the amount of the Reserve Fund and the Debt Service Fund . . . ," and stated that the proof of claim

---

[4] "[T]he obscurity of the Third Party Release was exacerbated in many of the notices by BNYM's use of the somewhat misleading term 'the Trustee Claim' to describe the Bondholders' proof of claim against the Debtors that the Indenture Trustee filed on their behalf in the bankruptcy case. . . . Significantly, the Indenture Trustee also included in the Proof of Claim its own claim for various expenses, including interest, fees, and costs, it incurred pre-petition and post-petition and to which it was allegedly entitled under the Bond Documents. By referring to both the Bondholders' claims and the Indenture Trustee's indemnification claims as a single consolidated claim, BNYM created a significant ambiguity. When BNYM 'disclosed' the Third Party Release in the August 16th Notice by referring to 'a release of any and all claims . . . against . . . the Trustee,' a Bondholder could easily have mistaken the words to refer to the Debtors' claims against BNYM and the Bondholders, rather than the Bondholders' potential claims against BNYM, particularly because nowhere in any of the . . . Notices did BNYM differentiate its indemnity claims against LBH from the Bondholders' claim under the Bonds." Lower Bucks Hosp., 471 B.R. at 461.

[5] The Stipulation states:
    WHEREAS, on August 18, 2010, the Bond Trustee, on behalf of the holders of the Bonds (hereinafter, "Bondholders"), filed proof of claim no. 377 against LBH in the amount of $25,906,294.98 plus interest and fees (the "Bond Trustee Claim") . . . . * * *
    2. In settlement of the Adversary Proceeding as set forth herein and in full satisfaction of the Bond Trustee Claim:
        (a) the Bond Trustee Claim (i) shall be allowed as a secured claim in the amount of $8,150,000 plus the amount of the Reserve Fund and the Debt Service Fund (as such terms are defined in the Amended Complaint) and (ii) otherwise be disallowed. . . .
Stipulation, p. 2, ¶ 2(a), as approved by Order, dated Sept. 14, 2011, entered Sept. 15, 2011 (Bankr. Doc. 1320), attaching as Ex. A, Stipulation and Joint Term Sheet (Bankr. Doc. 1320).

would "otherwise be disallowed." Id.  This suggests that the personal claims asserted by BNYM in the proof of claim were disallowed.

The Plan used "Bond Trustee/Bondholders Secured Claim" to describe the proof of claim. [6]  Although the label combined the Indenture Trustee's and the bondholders' separate claims, the label by definition applies only "as and to the extent such claim has been allowed by order of the Bankruptcy Court entered September 14, 2011." Id.  That Order approved the Stipulation.  Order, dated Sept. 14, 2011, entered Sept. 15, 2011 (Bankr. Doc. 1320).  This suggests that under both the Stipulation and the Plan, the personal claims asserted by BNYM in the proof of claim were disallowed.  See Mem., dated Oct. 5, 2016, at 11 (discussing the Order).

Despite the facial ambiguity in labeling, the Plan does not conflate the Indenture Trustee's and the bondholders' substantive rights to payment.  The Plan organizes claims against the Debtors into classes.  Plan, Article 3 (Bankr. Doc. 1350 at 16-18).  One classification is: "Class A3 consists of the Bond Trustee/Bondholders Secured Claim." Plan § 3.2(c) (Bankr. Doc. 1350 at 16).  As to allowed Class A3 Claims, the Plan states:

> (A) Pursuant to the Bond Trustee Settlement Agreement [aka the Stipulation], which is attached hereto as Exhibit C, and which is incorporated by reference . . . :
>
> (i) on or as soon as reasonably practicable after the Effective Date, the Disbursing Agent shall pay the Bond Trustee $8,150,000.00, to be used for the purposes set forth herein;
>
> (ii) each holder of an Allowed Class A3 Claim shall, on or as soon as reasonably practicable after the Effective Date, receive such holder's Pro Rata share of: (a) the Reserve Funds, free and clear of any right, title or interest of any of the Debtors, all of which shall be deemed released as of the Effective

---

[6] The Plan referred to the "Bond Trustee/Bondholders Secured Claim," defined as follows:
  "Bond Trustee/Bondholders Secured Claim" means that certain proof of claim filed by the Bond Trustee on behalf of the Bondholders, on or about August 18, 2010, designated claim no 377 by the Claims Agent, as and to the extent such claim has been allowed by order of the Bankruptcy Court entered September 14, 2011.
Plan § 1.18 (Bankr. Doc. 1350 at 8) (emphasis omitted).  See also Plan, Ex. C, Stipulation (Bankr. Doc. 1350-3); Confirmation Order, entered Dec. 7, 2011, ¶ 1 (Bankr. Doc. 1538).

> Date; and (b) $8,150,000.00, in full satisfaction, settlement, release and discharge of and in exchange for such holder's Allowed Claim . . . .

Plan § 5.1.3(A)(i), (ii) (Bankr. Doc. 1350 at 19-20); see also Stipulation, ¶ 2(a). This too suggests that under both the Stipulation and the Plan, the personal claims asserted by BNYM in the proof of claim were not integrated into the Class A3 Claims. And only the bondholders are holders of secured Allowed Class A3 Claims.

Nothing in the record suggests that the Indenture Trustee's personal claims for indemnification and priority payment of its fees and expenses were secured. The record establishes that under the transaction documents, the bondholders are the intended beneficiaries of the agreed security interests and liens. Mem., entered Mar. 23, 2016, at 4-5; Mem., entered Oct. 5, 2016, at 6-7. The Indenture Trustee held the property securing the bonds in trust for the bondholders. Id. The Plan does not suggest otherwise. Plan § 1.91.[7] See also Lower Bucks Hosp., 471 B.R. at 455 (noting that before LBH's discharge, BNYM had an "unsecured" claim for indemnification against LBH); see also Hr'g Tr., dated Mar. 2, 2012, 31:20-32:5, 35:16-22, 37:22-39:3 (Bankr. Doc. 1918) (Becker argued that BNYM's personal claim for indemnification was a prepetition, unsecured claim; BNYM did not controvert that assertion).

In the guise of an "overlooked" theory of recovery, movants' argument largely invokes the facial ambiguity in labeling of the bondholders' secured claim. But the record shows this tactic to be an over-simplification and a distortion. Otherwise, movants' position boils down to disagreement with previously rejected arguments. Motions for reconsideration are not "a vehicle for registering disagreement with the court's initial decision." Bostic v. AT&T of the V.I., 312

---

[7] The Plan states: "'Secured Claim' means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the Estate's interest in the asset(s) that secure(s) payment of the Claim, . . . (c) a Claim deemed or treated under the Plan as a Secured Claim." Plan § 1.19 (Bankr. Doc. 1350 at 14).

F. Supp. 2d 731, 733 (D.V.I. 2004).  A "general dissatisfaction with the court's ruling is not a valid ground for . . . reconsideration."  Ride the Ducks, L.L.C. v. Duck Boat Tours, Inc., No. 04-5595, 2005 WL 984216, at *1 (E.D. Pa. Apr. 21, 2005).

The proffered significance of the proof of claim is supported by citation to specific provisions of the Plan, the Loan Agreement, and the Indenture.  Defs. Br. at 2, 7-12; Defs. Reply at 2, 4-5.  However, movants previously argued in their summary judgment papers each cited provision presented for reconsideration.  The memorandum decision rejected those arguments, albeit finding that some triable disputes exist.  Mem., entered Mar. 23, 2016, at 27-29, 37-39.  Importantly, it was ruled that "the Plan expressly states that the only 'fees, costs and expenses' payable to the Indenture Trustee are those that it incurred 'pursuant to the Indenture,' or 'under the Indenture,' or 'in accordance with the terms of the Indenture.'"  Id. at 26-27 & n.10 (quoting Plan § 5.1.3(A)(i), (ii), § 5.1.3(B), § 10.3(b)).[8]  It was also ruled that "the Plan § 10.10 did not create additional rights beyond those contained in the Bond Documents—instead, it only preserved specific rights and obligations created by the Bond Documents . . . ."  Id. at 27-28 & n.11 (quoting Plan § 10.10).  And it was ruled that the Indenture Trustee's asserted rights to

---

[8]  The Plan § 5.1.3(A)(i), is quoted at pp. 8-9, supra.

The Plan § 5.1.3(B) expressly incorporated the Plan § 10.3(b):
> All Distributions to holders of Allowed Class A3 Claims pursuant to this Section 5.1.3 shall be subject to Section 10.3(b) hereof including without limitation those provisions relating to the Bond Trustee's fees, costs and expenses payable from such Distributions pursuant to the Indenture or applicable law.

The Plan § 10.3(b) stated:
> [A]ll Distributions payable under the Plan to holders of Bonds shall be paid by the Disbursing Agent to the Bond Trustee, which shall distribute such Distributions (net of any Bond Trustee fees, costs and expenses payable from such Distributions under the Indenture or applicable law), or cause such Distributions (net of any Bond Trustee fees, costs and expenses payable from such Distributions under the Indenture or applicable law) to be distributed, to the holders of the Bonds in accordance with the terms of the Indenture.

Plan §§ 5.1.3, 10.3 (Bankr. Doc. 1350 at 19-20, 35).

indemnification and priority payment "must be grounded on the terms of the Indenture, Loan Agreement, or other Bond Documents." Id. at 28-29. "If not found there, the asserted rights do not exist." Id. at 29.

Just like the Plan, the proof of claim did not create or "establish" any substantive rights to indemnification or priority payment. The proof of claim, as movants acknowledge, was solely an assertion of rights under cited provisions of the Loan Agreement and the Indenture. The memorandum decision's rulings as to the Plan, the Loan Agreement, and the Indenture apply to those same provisions as cited in the proof of claim. See Mem., entered Mar. 23, 2016, at 26-37. Movants only disagree with the memorandum decision's rulings.

The motion for reconsideration newly asserts that the Disclosure Statement supports the allowed claims theory. Defs. Br. at 2. And the Disclosure Statement is also not new evidence. For these reasons alone, reconsideration is not warranted. Even considering the merits, however, the Disclosure Statement—just like the Plan and the proof of claim—does not create or "establish" any substantive rights to indemnification and priority payment. In fact, the cited provisions of the Disclosure Statement corroborate this ruling. Each expressly limits the Indenture Trustee BNYM's rights to those "'pursuant to the Indenture or applicable law,'" "'under the Indenture or applicable law,'" or "'solely to the extent permitted by the Bond Documents.'" Id. (quoting Disclosure S. at 35, 47, 48 (Bankr. Doc. 1352)). Once again, movants only disagree with the memorandum decision's adverse rulings on summary judgment.

Movants correctly note that the memorandum decision did not discuss their proffered interpretations of the decisions of Judge Frank and Judge Savage. Defs. Br. at 4, 6, 14-17; Defs. Reply at 2, 5-6 (citing Lower Bucks Hosp., 471 B.R. at 445, 449 (Frank, J.); id., 488 B.R. at 312, 314-16 & n.34 (Savage, J.)). None was provided because the arguments did not merit

discussion. On summary judgment, movants mistakenly read into those decisions various decisional findings and rules consistent with their view of the record. It was submitted that the Judges agreed that the Indenture Trustee BNYM has a right to be indemnified for its fees and expenses from the funds allowed under the Plan for the bondholders. No such rulings were made. Positing error on reconsideration, movants persist in presenting similar misinterpretations. It is now submitted that BNYM's claims against LBH for indemnification and priority in payment, along with the bondholders' claims for the value of the bonds, are a single amalgamated claim that was allowed under the Plan. Once again, no rulings to that effect were made. Movants would develop rulings of their own making that would remodel the record, and in doing so, perhaps manufacture preclusive law-of-the case. This somewhat innovative stratagem is not a recognized ground for summary judgment or for reconsideration.

The allowed claims theory is buttressed by repetition of unfounded assertions previously presented on summary judgment. Movants assert that the bankruptcy parties agreed as follows: "LBH, the bondholders, including Plaintiff, and the Bankruptcy Court all knew and agreed that Defendants had an Allowed Claim for indemnification of the Indenture Trustee's pre- and post-bankruptcy expenses and that recovery of that claim would be paid from the funds the Indenture Trustee received in satisfaction of the Allowed Claims." Defs. Br. at 4. Movants further assert that BNYM compromised its indemnification claim against LBH in exchange for a claim against the bondholders' funds:

> The Indenture Trustee's claims against LBH personally—as asserted in the Proof of Claim and allowed by the Plan—were compromised and exchanged for *in rem* claims against the distributed funds, with the right to priority payment. Stated another way, the obligations of LBH under the Bond Documents were exchanged for the Indenture Trustee's recourse against the distribution.

Id. at 7. And movants assert: "All parties knew and agreed that those indemnification claims had priority and would be paid before any distributions to bondholders." Id. at 3, 13-14; Defs.

12

Reply at 6-7. As evidence of these assertions, movants cite the participation of the "Active Holders" in the settlement of the adversary proceeding as well as the bondholders' votes to accept the proposed plan for LBH's reorganization. Defs. Br. at 3-4, 13-14. Again, the record belies these assertions.

A searching review of the dockets in the underlying bankruptcy case and adversary proceeding as well as the record in this class action fails to disclose any evidence that LBH and BNYM agreed—or that any other parties to the stipulated and consensual Plan for reorganization of the Debtor LBH ever intended—that the Indenture Trustee's right to indemnification by LBH would be satisfied from funds that LBH paid as part of the bankruptcy process, without recourse to LBH following its discharge—as was previously so ruled. Mem., entered Mar. 23, 2016, at 31. Furthermore, that searching review has not disclosed any evidence that LBH and BNYM agreed—or that any other parties to the Plan ever intended—that the Indenture Trustee's personal claims for indemnification by LBH and for priority payment would be subsumed or incorporated as allowed claims under the bondholders' allowed Class A3 Claims. Again, all of the evidence points to the opposite conclusion—that is, the obligations of each Debtor were discharged categorically and completely. Id. See also Mem., entered Oct. 5, 2016, at 35-37 (rejecting Defendants' proffered descriptions of the Active Holders' role in settlement negotiations); Stevenson Decl. ¶¶ 6(c), 6(d) (Doc. 118-5); O'Neill Decl. ¶¶ 5, 6 (Doc. 118-6).

All of movants' variant theories of recovery against the bondholders' funds are arguments fully presented for the first time in this class action. The allowed claims theory is a novelty produced for reconsideration, although the record below suggests some rudimentary predecessor arguments. See, e.g., Hr'g Tr., dated Mar. 2, 2012, at 21:17-22 (Bankr. Doc. 1918) (BNYM argued that the third party release "does inure to the benefit of the bondholders, because

the Bond Trustee has a charging lien against the [Stipulation's] proceeds"); BNYM's Mem. of Law at 37 (Bankr. Doc. 1959) (same); <u>Lower Bucks Hosp.</u>, 471 B.R. at 454-55 (Judge Frank observed that "this asserted benefit may be illusory because it is not entirely clear that BNYM's premise (*i.e.*, the existence of a charging lien in its favor) is entirely accurate.").[9] The proposal that the Bankruptcy Court "agreed" and allowed BNYM's personal claims is incredible.

Curiously, given the importance movants now accord these recovery theories, none of the versions-in-progress was presented to the Bankruptcy Court at the confirmation hearing, when counsel jointly announced the critical details for their long negotiated, proposed consensual plan for reorganization of LBH.  <u>See</u> Hr'g Tr., dated Dec. 2, 2011, at 35:1-36:16 (Bankr. Doc. 1819). Instead, Defendants pursued confirmation of the third party release of all claims against the Indenture Trustee, including the bondholders' claims asserted in this class action.  The effort ultimately proved to be unsuccessful—perhaps explaining the emergence of the theories here.

This Memorandum accompanies the Order entered September 30, 2016 (Doc. 145), denying Defendants' Motion for Reconsideration (Doc. 138).

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

---

[9] Judge Frank: "BNYM suggests that the Third Party Release maximized the Bondholders' return under the Plan because absent the release, BNYM 'would [have been] forced to exercise its rights under the Indenture to assert a charging lien against the proceeds of the Stipulation to pay for the costs of Mr. Becker's district court litigation.' . . . * * * However, this asserted benefit may be illusory because it is not entirely clear that BNYM's premise (*i.e.*, the existence of a charging lien in its favor) is accurate. BNYM does not pinpoint which provision in the Indenture gives it an unconditional charging lien for expenses incurred in defense of the Bondholder litigation.  Perhaps BNYM is referring to § 11.04 of the Indenture.  If so, and without deciding the issue, I have some doubt whether that provision encompasses defense costs in Bondholder litigation, particularly if BNYM were found liable to the Bondholders in the litigation.  Instead, § 11.04 easily can be read to authorize BNYM's right to deduct its compensation and expenses only for performing its duties under the Indenture, not for defending itself from claims that it breached its duties." <u>Lower Bucks Hosp.</u>, 471 B.R. at 454-55 (alteration in original) (footnote omitted) (quoting BNYM's Mem. of Law at 37 (Bankr. Doc. 1959)).